The COASTAL CORPORATION and Cities Service Company, Plaintiffs,

v.

Charles W. DUNCAN, Jr., Secretary of Energy, Defendant.

Civ. A. Nos. 78–549, 78–550.

United States District Court, D. Delaware.

May 5, 1980.

Rodman Ward, Jr., Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., Keith A. Jones, David R. Johnson, and John M. Simpson, Fulbright & Jaworski, Washington, D. C., B. J. Bradshaw, Fulbright & Jaworski, Houston, Tex., for plaintiffs.

James W. Garvin, Jr., U. S. Atty., and John X. Denney, Jr., Asst. U. S. Atty., Wilmington, Del., Barbara Allen Babcock, C. Max Vassanelli, and Mary L. Sebek, Dept. of Justice, Washington, D. C., for defendant.

OPINION

MURRAY M. SCHWARTZ, District Judge.

This Court is once again faced with determining whether a department of the Federal Government has properly invoked its claims of privilege. In this case, the Secretary of the Department of Energy ("DOE") has purported to properly assert the executive privileges pertaining to "pre-decisional" and "investigatory" information, and the attorney-client and work product privileges, with respect to approximately 600 documents requested by plaintiffs The Coastal Corporation and Cities Service Company ("plaintiffs") in interrogatories and requests for production of documents. Plaintiffs, challenging the adequacy of defendant's assertions of privilege, moved to compel answers to interrogatories and production of documents on August 29, 1979. For the reasons set forth below, the Court holds that these privileges have not been properly asserted and plaintiffs' motion to compel will be granted.

This suit, commenced by plaintiffs in December, 1978, seeks judicial review of the validity of certain regulations promulgated by the DOE which establish a mechanism for oil refiners such as plaintiffs to pass on their increased costs of production in arriving at a maximum lawful selling price of refined petroleum. On February 19, 1979, plaintiffs' first set of interrogatories and requests for production were served on DOE. (Doc. No. 4). Defendant's time for response was extended until April 19, 1979, at its request. However, on the day the responses were due, the government filed a motion to stay discovery. On April 23, plaintiffs filed a motion for sanctions. Following a status conference on May 2, in which counsel for the government was advised that it lacked the power to grant itself a stay, the government still failed to file any response to discovery prior to the hearing on plaintiffs' motion for sanctions on July 17, 1979. Finally, on July 23, 1979, after the Court reserved decision on plaintiffs' motion and before issuance of a Memorandum Opinion denying the motion on August 15, the government filed its responses that are the subject of this motion to compel. In its August 15 Memorandum Opinion, the Court denied plaintiffs' request that the government be deemed to have waived the assertion of privilege. However, the government was prohibited from objecting to any discovery except on the ground of privilege. The Court added, "further recalcitrance on the government's part may well warrant more innovative consideration of available remedies to discovery abuse." Slip op. at 15 n.9.

As noted, the DOE's response asserted various privileges as grounds for not producing many of the requested documents. Included with the July 23 responses was the affidavit of F. Scott Bush, Acting Assistant Administrator for Regulations and Emergency Planning of the Economic Regulatory Administration ("ERA") of the Department of Energy. In this affidavit, Bush asserted, on behalf of DOE, the "government's privilege protecting pre-decisional, internal documents of a recommendatory or deliberative nature." (Doc. No. 32, Affidavit, ¶ 3). Although documents were also withheld based upon the "investigatory," attorney-client and work product privilege, no affidavit by agency officials or formal invocation of these privileges by DOE was presented. Instead, DOE's attorneys asserted these privileges on behalf of DOE in the introductory section of DOE's answers and objections to discovery prepared by the DOE's attorneys. (Doc. No. 32). It was not until November 30, 1979, more than three months after plaintiffs' motion to compel was filed, that DOE filed the affidavit of JoAnn Scott, an attorney with the Office of General Counsel, Regulatory Litigation Section, DOE, formally asserting these three privileges. (Doc. No. 47).

Subsequent to the filing of plaintiffs' motion to compel, the parties met and reviewed the DOE's answers and objections to discovery. As a result of these discussions, DOE filed several supplemental responses to discovery (Doc. Nos. 40, 41, 41A), as well as a revised document index (Doc. No. 47, Attachment A), which resulted in the assertions of privilege for approximately 100 documents being reversed by attorneys for the DOE and the subsequent release of these documents.[1] Thus, on July 23, an Acting Assistant Administrator of ERA, Mr. Bush, invoked DOE's so-called "pre-decisional" privilege, while the DOE's attorneys invoked the investigatory, attorney-client and work product privileges on behalf of the DOE. Subsequently, Ms. Scott, a

DOE attorney not previously involved with this litigation, re-asserted the latter three privileges and attorneys for the DOE in this litigation concluded, contrary to prior determinations, that a number of documents, including those claimed to be privileged by Mr. Bush, were not protected by any privilege. Plaintiffs contend that DOE has improperly asserted all four privileges and has accorded an overbroad scope to the dimensions of each privilege. Beginning with executive privilege, the Court will first determine whether DOE has properly invoked its claims of privilege and will address plaintiffs' other contentions only if necessary.

## I. EXECUTIVE PRIVILEGE

DOE has asserted two forms of executive privilege. The first, invoked by Bush, is "the government's privilege protecting pre-decisional, internal documents of a recommendatory or deliberative nature." (Doc. No. 32, Affidavit, ¶ 3). The second, first asserted by DOE's attorneys in this litigation and subsequently by Ms. Scott, encompasses documents "generated in the course of on-going field audits and investigations or [that] otherwise reflect internal investigatory techniques and methodologies." (Doc. No. 47, ¶ 6).

The starting point for determining whether executive privilege has been properly invoked is the Supreme Court's decision in *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). In that case, the Court, in discussing the privilege for military and state secrets, wrote:

> The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.

345 U.S. at 7–8, 73 S.Ct. at 532 (footnotes omitted).

---

1. In addition, several other documents withheld in this case as privileged were produced to counsel for plaintiffs as a result of litigation in another district. The DOE has, as a result, withdrawn its assertion of privilege with respect to these documents. (*See* Feb. 7, 1980 letter to the Court from counsel for plaintiffs).

Although *Reynolds* only discussed the executive privilege for military and state secrets, the courts have consistently applied these requirements to all claims of executive privilege, including those asserted here by the DOE. *United States v. O'Neill*, 619 F.2d 222 (3d Cir. 1980); *Association for Women in Science v. Califano*, 566 F.2d 339, 347 (D.C.Cir. 1977); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 542–43 (D.C.Cir. 1977); *Crawford v. Dominic*, 469 F.Supp. 260, 264 (E.D.Pa.1979); *Phillips Petroleum Co. v. DOE*, 1 (CCH) Energy Management ¶ 9740 at 9986 n.19 (D.Del.1977); *Jabara v. Kelley*, 75 F.R.D. 475, 484 (E.D.Mich.1977); *Pierson v. United States*, 428 F.Supp. 384, 394 (D.Del.1977); *A. O. Smith v. Federal Trade Commission*, 403 F.Supp. 1000, 1016 (D.Del.1975); *Kinoy v. Mitchell*, 67 F.R.D. 1, 11 (S.D.N.Y.1975); *Carter v. Carlson*, 56 F.R.D. 9, 10 (D.D.C.1972); *Wood v. Breier*, 54 F.R.D. 7, 11 (E.D.Wis.1972); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 326–27 n.22 (D.D.C.1966), *aff'd sub nom., V.E.B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C.Cir.), *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

### A. *DOE's Assertion of Executive Privilege for "Pre-decisional" Information*

█ While not disputing that the claim of executive privilege must be invoked by an affidavit of the head of the department with control over the matters in question (Doc. No. 45, Defendant's Memorandum in Opposition to Plaintiffs' Motion to Compel, at 8), DOE contends that this responsibility may be delegated by the agency head to a subordinate. In the instant case, David Bardin, Administrator, ERA, entered an unnumbered delegation order on July 19, 1979, giving the Assistant Administrator for Regulations and Emergency Planning of ERA (Bush) the authority "to assert evidentiary privilege when documents are requested or demanded of the Economic Regulatory Administration by litigants in judicial or administrative proceedings." (Doc. No. 46, Attachment A). This order further provided, "[t]he authority delegated to the Assistant Administrator for Regulations and Emergency Planning may be further dele-

gated, in whole or in part, as may be appropriate." *Id.* On July 19, Bardin also instructed Bush that the review of the documents was to be in accordance with guidelines requiring, *inter alia*, personal and careful consideration as to each document, segregation of portions of documents which could be released and consistency of action among various civil actions. DOE contends that Mr. Bardin, as Administrator of ERA, was himself given the authority to assert privilege on behalf of the ERA by DOE Delegation Order No. 0204–4, 10 C.F.R. § 1001.1, Appendix, in which the Secretary delegated to the ERA Administrator the authority to "adopt rules, issue orders, licenses and allocations, collect fees, and take such other action as may be necessary and appropriate to administer" the functions of the ERA.

DOE relies upon footnotes in two of this Court's previous decisions as authority for its contention that the responsibility to assert privilege may be delegated. In *A. O. Smith v. F.T.C., supra*, the Court, after expressly stating that executive privilege must be raised by the head of an agency after actual personal consideration by that officer, 403 F.Supp. at 1016, added the following footnote:

Plaintiffs have challenged whether the Chairman of the FTC is the "head" of the Commission for purposes of asserting executive privilege claims with arguments that the Chairman is not able to act on behalf of the Commission as a whole. The Court finds this argument to be unpersuasive because neo-literal compliance with the requirement that an agency head act in this context is unnecessary. That requirement was designed to deter governmental units from too freely claiming a privilege that is not to be lightly invoked, *U. S. v. Reynolds, supra*, by assuring that some one in a position of high authority could examine the materials involved from a vantage point involving both expertise and an overview-type perspective. It is impossible to suggest that allowing the FTC Chairman to raise

these claims will undermine the purposes behind this requirement.

403 F.Supp. at 1016 n.48.

It should be clear that this language is completely inapposite to the circumstances of the instant case. Permitting the Chairman of the FTC to assert privilege on behalf of the whole Commission is a far cry from permitting an Assistant Administrator of a sub-agency of the DOE to assert privilege on behalf of the Secretary of Energy.

The DOE next points to language in Judge Stapleton's opinion in *Amoco Production Co. v. DOE*, 1 (CCH) Energy Management ¶ 9752 (D.Del.1979). Judge Stapleton stated that one of the "formal requirements which an agency must meet when it asserts executive privilege [is] the privilege must be claimed by the head of the agency after personal consideration." *Id.* at 9930. The Court then added the following footnote:

This does not necessarily mean that the Secretary must personally inspect each document as to which executive privilege is claimed, so long as he establishes guidelines of sufficient specificity to serve the interest discussed by Judge Schwartz in *Pierson* as being the basis for the requirement of participation by the agency head.

*Id.* at 9930 n.16.

Once again, this language does not support the DOE's assertion of privilege in this case. The Secretary has not merely failed to personally examine *all* of the documents claimed to be privileged; he has not looked at *any* of the documents. Moreover, the Secretary has not established any guidelines dealing with the assertion of privilege; his general delegation order referred to above makes no mention of privilege. Under the terms of Bardin's delegation order, Bush was given authority only to assert privilege when documents were requested of the ERA and not on behalf of the entire Department of Energy. (Doc. No. 46, Attachment A). Thus, it cannot be said there has been an assertion of privilege *on behalf of the DOE* pursuant to any guidelines established by the Secretary. Finally, and perhaps most important the DOE's mechanism

for asserting privilege fails to comport with the policy interests behind the requirement that the agency head assert the privilege after personal consideration. These interests, as noted in this Court's decisions in *Pierson v. United States, supra,* include the need for consistency and careful consideration in the assertion of privilege, an exception to the usually broad scope of discovery. "To permit any government attorney to assert the privilege would derogate both of those interests. It would be extremely difficult to develop a consistent policy of claiming the privilege." *Pierson v. United States,* 428 F.Supp. at 395.

The actions of the DOE and its attorneys in this case amount to a claiming of the pre-decisional executive privilege by the DOE's attorneys. Following Mr. Bush's assertion of privilege, DOE attorneys reviewed the documents claimed to be privileged and determined, without participation by Mr. Bush, that a number of these documents were not privileged. Thus, Bush's decision was in effect overruled by DOE attorneys. Requiring the agency head to claim the privilege assures the Court, which must make the ultimate decision, that executive privilege has not been lightly invoked by the agency, *United States v. Reynolds, supra,* and that in the considered judgment of the individual with an overall responsibility for the administration of the agency, the documents withheld are indeed thought to be privileged. At oral argument, counsel for DOE conceded that DOE's attorneys could not "overrule the decisions of a politically responsible authority," (Doc. No. 51 at 87), such as the Secretary of Energy and Mr. Bardin. (Doc. No. 51 at 87–88). Thus, in the minds of the DOE's attorneys, Mr. Bush was not a "politically responsible authority" whose privilege decisions could not be overruled. It is clear, then, that the assertion by Mr. Bush of executive privilege does not comport with the policy interests of consistency and careful consideration served by the assertion of privilege by the agency head.[2]

2. It is even clearer that Mr. Bush's consideration of the documents asserted to be privileged

was less than careful. The delegation order from Mr. Bardin authorizing Mr. Bush to claim

Finally, DOE contends that the ERA, as opposed to the DOE, was the agency with control over the matters in question, and therefore the privilege was properly asserted by an Assistant Administrator of the ERA. Assuming, without deciding, that the ERA was the appropriate agency for purposes of assertion of the privilege, for the reasons set forth immediately above, privilege was not properly invoked by the ERA. Mr. Bush was certainly not the head of the agency and the policy interests behind the *Pierson* rule were not served by any delegation from Bardin to Bush. In light of the DOE's concession that Mr. Bardin could not be overruled by DOE attorneys with respect to any privilege decisions he might make while Mr. Bush's decisions were in fact reversed, the DOE's argument fails.

■ In addition to failing to satisfy the requirement that executive privilege be raised by the head of the agency, the DOE has failed to comply with two other requirements. First, a claim of executive privilege must specifically designate and describe the documents. *Amoco Production Co. v. DOE, supra; Pierson v. United States, supra; Phillips Petroleum Co. v. DOE, supra; A. O. Smith v. F. T. C., supra.* The DOE has provided little information in both document indices submitted concerning the contents of each document claimed to be privileged. Second, the DOE has failed to proffer "precise and certain" reasons for preserving the confidentiality of the requested documents. *A. O. Smith v. F. T. C., supra,* 403 F.Supp. at 1017. While Mr. Bush's affidavit states several conclusory reasons for withholding all the documents marked "PD" on the indices, no effort has been made to indicate why particular documents must be kept confidential. The DOE's failure to comply with these two requirements

prevents the Court from assessing the harm resulting from disclosure against plaintiffs' need for the information. *A. O. Smith v. F. T. C., supra,* 403 F.Supp. at 1017.

For all the reasons stated above, it is held that the executive privilege for pre-decisional documents was improperly invoked by the DOE.

B. *DOE's Assertion of Privilege for "Investigatory" Information*

■ The DOE's argument that it properly invoked the investigatory privilege is even more strained. As noted *supra* at 516–517, the requirements for asserting executive privilege do not vary with the form of privilege that is asserted. With respect to the invoking of the investigatory privilege, there has been absolutely no involvement by the Secretary of Energy or the Administrator of the ERA. Instead, this privilege was first baldly asserted by the DOE's attorneys who prepared DOE's answers and objections to discovery and subsequently by JoAnn Scott, an attorney in the DOE's Office of General Counsel. (Doc. No. 47). For the reasons set forth *supra* at 518–519, assertion of executive privilege by an attorney is completely improper. Moreover, the DOE has failed to adequately specify the contents of the documents and the precise reasons for withholding these documents. Under these circumstances, the Court holds that the investigatory privilege has been improperly invoked.

## II. ATTORNEY–CLIENT PRIVILEGE

The DOE has invoked the attorney-client privilege, first by the unsworn answers to discovery provided by its attorneys and subsequently by the affidavit of JoAnn Scott. Ms. Scott asserted this privilege with respect to documents "written either by an attorney to a non-attorney within the agency or vice versa for the purpose of securing

privilege on behalf of ERA was signed on July 19, 1979, the same day Bush's affidavit asserting the privilege was executed. Counsel for DOE estimated conservatively that these documents occupied a file drawer of three feet in depth. It cannot be suggested that, under these circumstances, Mr. Bush reviewed the withheld documents with the degree of scrutiny

and deliberation required by *Pierson.* In fact, Mr. Bush himself noted that "in view of the limited time available for my review, I have not yet been able to indicate non-privileged portions of these documents which it may be possible to separate." (Doc. No. 32, Affidavit, ¶ 4). There is no indication in the record that he subsequently did so.

or giving legal advice on enforcement matters." (Doc. No. 47, ¶ 9). Scott further stated, "all such documents marked with an "AC" include either pre-deliberative, investigatory or proprietary material which has been transmitted between writer and recipient on a confidential basis." (*Id.* ¶ 10).

■■■ While it is recognized that the attorney-client privilege is applicable in the factual context where a government agency is a "client" and agency lawyers are "attorneys," *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975); *Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980); *Mead Data Central, Inc. v. U. S. Department of Air Force*, 566 F.2d 242, 252 (D.C.Cir. 1977); *Phillips Petroleum Co. v. DOE, supra,* the privilege is still limited to confidential communications between attorney and client for the purpose of giving or receiving legal advice. "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980). Because the privilege "blocks the usual rule requiring full disclosure in an effort to establish the truth," *Valente v. PepsiCo Inc.,* 68 F.R.D. 361, 367 (D.Del.1975), it is construed very narrowly. In *International · Paper Co. v. Fibreboard Corporation,* 63 F.R.D. 88 (D.Del.1974), this Court recited the criteria established by Judge Wyzanski in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950), and set forth the showing required by those who would resist discovery on this basis:

'The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a *fact* of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an *opinion* on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for purposes of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.' [3]

.     .     .     .     .

It is incumbent on one asserting the privilege to make a proper showing that each of the criteria set forth in the *United Shoe* case existed. . . . Such a showing is usually by affidavit in which the documents are adequately listed and described showing (a) the identity and corporate position of the person or persons interviewed or supplying the information, (b) the place, approximate date, and manner of recording or otherwise preparing the instrument, (c) the names of the person or persons (other than stenographical or clerical assistants) participating in the interview and preparation of the document, and (d) the name and corporate positions, if any, of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, reading or substantial summarization. . . .

A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality. Unless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the privilege. An improperly asserted claim of privilege is no claim of privilege at all.

.     .     .

In short, a party resisting discovery on the ground of the attorney-client privi-

---

**3.** Although Judge Wyzanski's criteria appear to limit the privilege to confidential communications by clients, it is clear the privilege extends to the attorney's legal advice and opinions which encompass or reflect the thoughts and confidences of the client. *See United States v.*

*Amerada Hess Corp.,* 619 F.2d 980 (3d Cir. 1980); *Coastal States Gas Corporation v. D. O. E.,* 617 F.2d 854, 863 (D.C.Cir. 1980); *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136, 144 (D.Del.1977).

lege must by affidavit show sufficient *facts* as to bring the identified and described documents within the narrow confines of the privilege.

63 F.R.D. at 93–94.

■ The DOE's affidavits and document index proffered in support of its assertion of attorney-client privilege fall far short of the requirements set forth in *International Paper*. DOE has made no attempt to provide the Court with a list of all recipients of each document. In fact, counsel for DOE conceded at oral argument "these are documents that have come in from all over the country" (Doc. No. 51 at 71) and that DOE did not have a "transmittal sheet" indicating by whom each document was seen. (*Id.* at 72). Instead, counsel asserted, without benefit of case authority, that "some of this Court's very strict analyses of confidentiality are not entirely relevant to governmental assertions of confidentiality because of the nature of the organization." (*Id.* at 71). This is incorrect. As recently stated by the District of Columbia Court of Appeals:

> We agree with the district court that DOE has failed to demonstrate a fundamental prerequisite to assertion of the privilege: confidentiality both at the time of the communication and maintained since. The burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure. Not only has the DOE failed to affirmatively establish confidentiality, but the evidence shows no attempt whatsoever to protect these memoranda within the agency. The agency has admitted that it does not know who has had access to the documents. . . .

*Coastal States Gas Corporation v. DOE*, 617 F.2d 854, 863 (D.C.Cir. 1980). As the purpose of the privilege is to protect confidential information, DOE must establish that the documents withheld under the privilege were intended to be confidential at the time they were written and were maintained as confidential since. It has failed to do so.

■ Moreover, DOE has failed to provide the Court with sufficient descriptions of the documents and sufficient *facts* so as to bring them within the scope of the privilege. This is an essential requirement, for as noted by Chief Judge Latchum in *International Paper*, "unless the affidavit is precise to bring the document within the rule, the Court has no basis on which to· weigh the applicability of the claim of privilege." 63 F.R.D. at 94. The attorney-client privilege is limited to communications made to or by an attorney who "in connection with this communication *is acting as a lawyer.*" 89 F.Supp. at 358 (emphasis added). In addition, the communication must "relate to a fact of which the attorney was informed . . . for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *Id.* at 358–59. When a party seeks to withhold documents on the basis of attorney-client privilege, it must persuade the Court that each document fits within these requirements. This becomes even more essential when the documents have been generated by the government where many attorneys function primarily as policy-makers rather than as lawyers. The DOE has completely failed to provide this Court with "a specific designation and description of the documents" and "sufficient facts," 63 F.R.D. at 94, so as to demonstrate that the attorneys involved with the allegedly privileged documents were indeed acting in the capacity of lawyers and that the communications were made in connection with a request for a legal opinion or assistance in a specified legal proceeding. Thus, it has failed to make a proper showing as to the applicability of the attorney-client privilege.

## III. WORK–PRODUCT PRIVILEGE

In *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the Supreme Court held that the "work product" of an attorney enjoys a qualified privilege from discovery. Rule 26(b)(3) of the Federal Rules of Civil Procedure subsequently codified this doctrine:

> a party may obtain discovery of documents and tangible things . . . pre-

pared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of this case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

As this Court has noted, "the policy behind this rule is not to protect all recorded opinions, observations and impressions of an attorney made in connection with any legal problem, but to protect the integrity of the adversary process." *Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 150–51 (D.Del.1977). Because of this interest in protecting the adversary process, the work-product privilege is limited to those documents prepared "in anticipation of litigation." *Id.; Phillips Petroleum Co. v. DOE, supra; Coastal States Gas Corp. v. DOE, supra,* at 864; *Jordan v. United States Dept. of Justice,* 591 F.2d 753, 775 (D.C.Cir. 1978). The DOE has failed to establish that the documents withheld under this assertion of privilege were so prepared. While Ms. Scott's affidavit states that "the documents marked with a 'WP' in defendant's document indices contain the thoughts and impressions of attorneys within the DOE regarding (1) pending or anticipated enforcement proceedings which at that time could have been considered likely to lead to litigation or (2) pending litigation," (Doc. No. 47, ¶ 12), the attached docu-

ment indices do not specify the litigation for which these documents were prepared. Indeed, in most of the instances in which this privilege has been asserted, the specific matter has been *deleted* from the indices. In its brief, the DOE apparently supports its contention that litigation was "considered likely" at the time many of these documents were prepared with the following statement, "[i]n the context of DOE enforcement activities, as should be apparent to this Court, the 'likelihood of litigation' is very strong in many of DOE's regulatory actions." (Doc. No. 45, at 20). A similar argument by DOE was recently rejected by the D.C. Circuit: "to argue that every audit is potentially the subject of litigation is to go too far." *Coastal States Gas Corp. v. DOE,* 617 F.2d 854, 865 (D.C.Cir. 1980). Thus, the DOE, having not pointed with specificity to the litigation anticipated by DOE attorneys in preparing the documents, has failed to properly assert the attorney work-product privilege.

## IV. THE EFFECT OF THE DOE'S IMPROPER ASSERTION OF PRIVILEGE

Having found that the DOE has improperly invoked executive privilege, attorney-client privilege, and work-product privilege,[4] the Court must determine whether to compel the immediate production of these documents or to accept the DOE's offer to "further substantiate" its claims of privilege. (Doc. No. 45, at 20 n.11). For the reasons set forth below, I conclude that immediate production of documents is required.

In *A. O. Smith v. Federal Trade Commission, supra,* this Court held that executive privilege had been claimed improperly by the F.T.C. and then went on to state,

. . . an improperly raised claim of privilege is no privilege at all. (citations

---

4. It is unnecessary to determine other issues with regard to these privileges, such as whether investigatory privilege applies to closed investigations, *see Swanner v. United States,* 406 F.2d 716 (5th Cir. 1969); *United States v. O'Neill,* 81 F.R.D. 664 (E.D.Pa.1979), *rev'd on other grounds,* 619 F.2d 222 (3d Cir. 1980); *Wood v. Breier,* 54 F.R.D. 7 (E.D.Wis.1972),

whether the work-product privilege lapses with the end of the litigation for which a document has been prepared, or whether the same lawyers who prepared the documents must assert that privilege in this litigation. *See Coastal States Gas Corp. v. DOE, supra,* at 865, and n.21.

omitted) Thus, the Court would be totally justified at this juncture in ruling against the Commission on its claims of executive privilege, particularly in view of the fact that the Commission was previously made aware of the shortcomings inherent in its prior attempts to raise executive privilege as a barrier to discovery.

403 F.Supp. at 1017.

To say that DOE's conduct in this case has been less than exemplary is a mild understatement. Plaintiffs' requests for discovery were filed on February 19, 1979. After first being granted an extension of time in which to respond to these requests, the DOE failed to respond on April 19, 1979, at which time it moved to stay discovery. After plaintiffs moved for sanctions, the DOE still refused to respond to discovery until after the Court heard plaintiffs' motion, thereby unilaterally granting itself a stay without benefit of Court order and in blatant disregard of the Federal Rules of Civil Procedure. Despite the clear holdings of *A. O. Smith, supra*, and *Pierson, supra*, the DOE asserted executive privilege via its attorneys and an Assistant Administrator of a sub-agency of the DOE. After plaintiffs moved to compel and the parties discussed the DOE's responses, the DOE took advantage of several other opportunities to revise its document indices and substantiate its assertions of privilege. Rather than comply with the holdings of *Smith* and *Pierson*, the DOE proffered the affidavit of Ms. Scott, a DOE attorney, in support of its assertion of executive privilege. Perhaps the DOE anticipated receiving from this Court yet another opportunity to properly support its claims of privilege, since in *Smith* and *Pierson*, the Court did provide the government with such an opportunity. However, "reason and experience," *Trammel v. United States,* 445 U.S. 40, 53, 100 S.Ct. 906, 914, 63 L.Ed.2d 186 (1980), dictate that this procedure no longer be followed.

This Court has dealt with the requirements for asserting the privileges claimed by the DOE in numerous previous cases, including some in which the DOE was a defendant. *See e. g., Amoco Production Co. v. DOE,* 1 (CCH) Energy Management ¶ 9752 (D.Del.1979); *Phillips Petroleum Co. v. DOE,* 1 (CCH) Energy Management ¶ 9740 (D.Del.1977); *Pierson v. United States, supra; A. O. Smith v. F. T. C., supra; International Paper Co. v. Fibreboard Corp., supra; Hercules Inc. v. Exxon Corp., supra.* In *Amoco* the Court noted that DOE was attempting to relitigate the issues decided in *Smith, Pierson* and *Phillips* "despite this well established body of case law." 1 (CCH) Energy Management at 9930. In *Gulf Oil Corp. v. Schlesinger,* 465 F.Supp. 913, 916 (E.D.Pa.1979), Chief Judge Lord was forced to restate his previous rulings concerning the DOE's assertion of privilege because "defendants seem not to understand that *they* have the burden of proving the applicability of the privilege to the information sought by Gulf." In *Tenneco Oil Co. v. DOE,* 475 F.Supp. 299 (D.Del.1979), the DOE made it clear to this Court that it viewed as improperly decided several cases decided in this District regarding discovery issues somewhat similar to those present in the instant case. This Court at that time refused to depart from its previous rulings, being of the opinion that those cases were indeed soundly decided. Thus, the DOE apparently has a great deal of difficulty accepting this Court's decisions as the case law of the District.

In *Amoco Production Co. v. DOE,* C.A. No.78-463, there is currently pending before this Court plaintiffs' motion to compel discovery. In that case, the DOE has asserted executive privilege as to over 700 documents through the affidavit of Mr. Bush and investigatory privilege has been asserted by the DOE through its attorneys. While the Court expresses no view as to the merits of the pending motion in that case, it is clear, in light of the DOE's past and present behavior, that the Court must put an end to the DOE's tactics of refusing to comply with the well-established case law of this District. Permitting the DOE to revise its indices yet another time would only encourage the continuing use of such tactics. Therefore, having improperly raised its claims of privilege, DOE has, in effect, asserted no privilege at all and will be ordered to produce all documents with-

held on the basis of executive privilege, attorney-client privilege and work-product privilege.[5]

Plaintiffs first requested the disputed documents more than one year ago. Now is the time for this request to be satisfied. Accordingly, an order will be entered granting plaintiffs' motion to compel.

---

**5.** All documents produced pursuant to this Opinion shall be subject to the protective order negotiated by the parties and filed with the Court on July 31. This measure will diminish any harm to DOE resulting from the production of documents.