Suzanne E. BURNETT and Danny W. Burnett, Guardians Ad Litem for Nicole Danyel Burnett, a minor, Suzanne E. Burnett and Danny W. Burnett, individually, Plaintiffs,

v.

GHASSEM VAKILI, M.D., P.A., Ghassem Vakili, M.D., J. Joaquin Palacio, M.D., P.A., J. Joaquin Palacio, M.D., Medical Center of Delaware, Inc., Defendants.

Civ. A. No. 87–274 MMS.

United States District Court, D. Delaware.

April 28, 1988.

---

Ben T. Castle, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.

Mason E. Turner, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant Vakili.

Mary Pat Trostle, of Biggs & Battaglia, Wilmington, Del., for defendant Palacio.

John A. Parkins, of Richards, Layton & Finger, Wilmington, Del., for defendant Medical Center.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

In this diversity medical malpractice action, plaintiffs filed a motion to compel defendant, the Medical Center of Delaware, Inc. ("the Medical Center"), to produce documents specified in paragraph 7 of plaintiffs' November 4, 1987 request for production. Plaintiffs seek

> Copies of the employment applications, employment records, resumes and C.V.'s of any residents who attended Suzanne Burnett between June 7 and July 5, 1985.

The Medical Center has refused to produce these documents based upon the privilege for physician peer review committee records contained in 24 Del.Code § 1768 (1987). When exercising diversity jurisdiction, a district court must apply the law of privilege as it would be applied by the courts of the state in which it sits. *Samuelson v. Susen,* 576 F.2d 546, 549 (3d Cir.1978).

## I. BACKGROUND

Ms. Burnett encountered problems with her pregnancy and was hospitalized at the Medical Center June 7 to 11, 1985, June 28, 1985 and July 4, 1985, the date the child was delivered. Plaintiffs allege that failure to provide an acceptable standard of care caused damage to the child. Plaintiffs concede the adequacy of the care received on the date of delivery.

The Medical Center asserts that under 24 Del.Code § 1768 these documents are not

discoverable.[1] Section 1768 excludes from discovery or subpoena the records and proceedings of any "professional standards review organization established under federal law (or other peer review committee or organization), physicians' work, with a view to the quality of care and utilization of hospital or nursing home facilities, home visits and office visits." 24 Del.Code § 1768(a) (1987).

## II. ANALYSIS

### A. *Waiver by Failure to Comply with Coastal Corp. v. Duncan*

Initially, plaintiffs contend the Medical Center has waived any right to assert the privileges contained in Section 1768 by its failure to abide by the procedures set forth in *Coastal Corp. v. Duncan*, 86 F.R.D. 514 (D.Del.1980). This Court required that assertion of attorney-client privilege or work product privilege be supported by an affidavit listing and describing each document and the basis of privilege for each. *Id.* at 520–21. Failure to properly invoke these privileges provides grounds for their waiver. *Id.* at 522.

■ The Court declines to extend the procedures set forth in *Coastal Corp.* to the assertion of medical review board privileges under Section 1768. The Medical Center, therefore, has not waived its privileges under Section 1768 by failing to provide the affidavit required in *Coastal Corp.*

### B. *Inclusion of Resident Records in Section 1768*

Plaintiffs contend that the requested documents are not covered by Section 1768 because the committees reviewing resident applications and the progress of residents are not the "peer review" committees referred to in the statute.

The Delaware Superior Court has held that the statute provides protection for records and documents used or generated by physician peer review committees that consider initial applications for staff privileges and physician committees that review ongoing physician performance. The state court found that a physician's "application for, and record of, his privileges at [the hospital] are an essential part of the peer review process and are equally protected from discovery." *Shaw v. Metzger*, No. 77C–DE–101, slip op. at 3 (Del.Super. Nov. 22, 1982). Concluding other physicians' reports to a Credentials Committee concerning a physician's professional performance are "an inherent part of the peer review process," the Superior Court also found these records unavailable under Section 1768. *Connolly v. Labowitz* ("*Connolly II*"), No. 83C–AU–1, slip op. at 2 (Del.Super. Aug. 7, 1986).[2]

---

1. 24 Del.Code § 1768 reads in relevant part:
     (a) The Board of Medical Practice, the Medical Society of Delaware, their members, or the members of any committees appointed thereby, and members of hospital and osteopathic medical society committees, or of a professional standards review organization established under federal law (or other peer review committee or organization), whose function is the review of medical records, medical care and physicians' work, with a view to the quality of care and utilization of hospital or nursing home facilities, home visits and office visits, shall not be subject to, and shall be immune from, claim, suit, liability, damages or any other recourse, civil or criminal, . . . .
     (b) The records and proceedings of any such committees or organizations as described in subsection (a) of this section shall be confidential and shall be used by such committees or organizations and the members thereof only in the exercise of the proper functions of the committee or organization

and shall not be public records and shall not be available for court subpoena or subject to discovery; and no person in attendance at a meeting of any such committee or organization shall be required to testify as to what transpired thereat. No physician, hospital, organization or institution furnishing information, data, reports or records to any such committee or organization with respect to any patient examined or treated by such physician or confined in such hospital or institution shall, by reason of furnishing such information, be liable in damages to any person or subject to any other recourse, civil or criminal.

2. Judges of this Court have similarly interpreted Section 1768. Judge Latchum held that Section 1768 protected all letters, records and documents relating to the resignation of a physician. *DiFilippo v. Beck*, No. 77–456, slip op. at 1–2 (D.Del. July 21, 1981). In addition to protecting any charges made against the physician or records relating to his professional conduct

The records sought by plaintiffs include employment applications and records of residents. As stated in the affidavit of Dr. Slate, Chairman of Obstetrics and Gynecology, the Medical Center has a committee which reviews and ranks resident applications. Another committee of staff physicians conducts annual evaluations of residents. The records sought by the plaintiffs are used by these committees to perform their functions.

■ Plaintiffs argue that the distinction between staff physicians evaluating the privileges applications and performance of other staff physicians, and staff physicians evaluating the employment applications and performance of resident physicians requires this Court to find that records pertaining to residents are not within the coverage of Section 1768. No principled basis exists for this distinction. The Court therefore finds the employment applications and records used by the resident selection committee and the resident evaluation committee at the Medical Center to be within the scope of Section 1768.

### C. *Waiver by Publication*

The plaintiffs also assert that, even if the documents are within section 1768, that the Medical Center waived its privilege by publishing the documents outside the peer review process. In *Connolly v. Labowitz* (*"Connolly I"*), C.A. No. 83C–AU–1, slip op. at 3 (Del.Super. Dec. 17, 1984) (Bifferato, J.), the Delaware Superior Court held that protection under Section 1768 only extends to documents used exclusively by the peer review committee, and that use or publication to persons outside that committee waived the privilege. Finding department heads to be *ex officio* members of the Credentials Committee, and their evaluation "an essential part of the peer review process," Judge Taylor held these documents protected under Section 1768. *Connolly II*, slip op. at 1.

■ Plaintiffs seek documents in the employment files of residents who treated

while on the staff of a hospital, Judge Wright ruled that Section 1768 covered all records relating to a physician's application for staff privi-

Mrs. Burnett. Dr. William Slate, chairman of the Obstetrics and Gynecology Department at the Medical Center, stated in his affidavit that he had access to these files. The Court finds that, as chairman of the Obstetrics and Gynecology Department, Dr. Slate is an *ex officio* member of the committees reviewing the applications and performance of residents. Therefore, there has been no publication outside the committees, and the privilege has not been waived.

The Court will issue an order denying plaintiffs' motion to compel production of the employment applications and records of Medical Center resident physicians who attended Suzanne Burnett between June 7 and July 5, 1985.

leges. *Robinson v. LeRoy*, No. 84–121, slip op. at 1–3 (D.Del. Nov. 16, 1984) [available on WESTLAW, 1984 WL 14129].