**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| MECHEL BLUESTONE, INC., and MECHEL MINING OAO, | ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) | |
| v. | ) ) ) | C.A. No. 9218-VCL |
| JAMES C. JUSTICE COMPANIES, INC.; JAMES C. JUSTICE, II; JAMES C. JUSTICE, III; JILLEAN L. JUSTICE; and JAMES C. JUSTICE II, as Trustee of the JAMES C. JUSTICE II GRAT NO. 1, and of the JAMES C. JUSTICE II GRAT NO. 2, | ) ) ) ) ) ) ) ) ) | |
| Defendants and Counterclaimants. | ) | |

**MEMORANDUM OPINION**

Date Submitted: December 8, 2014
Date Decided: December 12, 2014

Jay N. Moffitt, Lauren K. Neal, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Mark R. Robeck, Stephen R. Freeland, Matthew P. Larson, KELLEY DRYE & WARREN, LLP, Washington, D.C.; Emil J. Barth, BAKER BOTTS, L.L.P., Washington, D.C.; Brian A. Glasser, BAILEY & GLASSER, LLP, Charleston, West Virginia; *Attorneys for Plaintiffs.*

Raymond J. DiCamillo, Susan M. Hannigan, Rachel E. Horn, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; David B. Tulchin, William H. Wagener, SULLIVAN & CROMWELL LLP, New York, New York; *Attorneys for Defendants.*

**LASTER, Vice Chancellor.**

The defendants have moved to compel the production of documents identified on the plaintiffs' privilege log. The defendants contend that the plaintiffs' initial log was so flawed, and the plaintiffs' four subsequent efforts to provide an adequate log so feckless, that the appropriate remedy is to deem the privilege waived as to all documents listed on the log. This decision deems the privilege waived as to the items where the plaintiffs fell substantially short of the well-documented and easily identified requirements for supporting a claim of privilege.

## I.     FACTUAL BACKGROUND

The factual background is drawn from the pleadings and submissions made in connection with the current motion to compel. The discussion does not comprise findings of fact in the post-trial sense, but rather represents how the record appears at this preliminary stage.

### A.     The Merger

In 2009, plaintiffs Mechel Bluestone, Inc., and Mechel Mining OAO (jointly, "Mechel") acquired entities that owned certain coal properties and associated assets in West Virginia (the "Bluestone Properties") from defendants James C. Justice Companies, Inc., James C. Justice II, James C. Justice III, Jillean L. Justice, and James C. Justice II, as Trustee of the trusts James C. Justice II GRAT No. 1 and James C. Justice II GRAT No. 2 (collectively "Justice"). Mechel acquired the properties pursuant to an Agreement and Plan of Merger dated as of March 16, 2009 (the "Merger Agreement").

Before the acquisition, to assist in determining the purchase price, Weir International, Inc. ("Weir") prepared a report estimating the base volume of coal reserves

1

on the Bluestone Properties. Justice believed that the report understated the amount of coal reserves and argued in favor of a greater volume. To resolve the disagreement, the parties provided in the Merger Agreement that if additional coal was discovered on the Bluestone Properties within two years (the "Contingent Reserves"), then Mechel would pay Justice additional amounts (the "Contingent Payment"). The Merger Agreement called for Weir to assess the volume of any Contingent Reserves in accordance with applicable professional standards and using the methods employed in its initial report.

By letter dated September 7, 2011, Weir identified approximately 60 million tons of Contingent Reserves on the Bluestone Properties (the "Weir Letter"). Under the Merger Agreement, this volume of Contingent Reserves would equate to a Continent Payment of approximately $165 million. Mechel disputed the determination made in the Weir Letter, contending that it failed to satisfy the relevant provisions in the Merger Agreement.

On January 2, 2014, Mechel filed this action. Count I of the complaint seeks a declaratory judgment that (i) Justice failed to satisfy its obligations under the Merger Agreement, (ii) the Weir Letter did not satisfy the Contingent Payment provisions under the Merger Agreement, and (iii) Mechel does not owe Justice any Contingent Payment. Count II asserts that Justice breached the Merger Agreement by not acting in accordance with the declarations demanded in Count I. Count III seeks a decree of specific performance compelling Justice to act in accordance with the declarations demanded in Count I. Count IV alleges that Justice committed fraud because it knew or should have known that Weir Letter provided false information about the Contingent Reserves.

2

The parties agreed to a schedule that would bring the case to trial in May 2015. The schedule called for the parties to substantially complete their document production by August 15, 2014, to exchange privilege logs on September 12, and to take fact depositions between September 1 and December 5. Mechel advised Justice that it could not meet the August 15 deadline, and Justice agreed that Mechel could complete its production by September 12.

## B. The Initial Privilege Log

On September 12, 2014, Mechel produced its initial privilege log. The 672-page document contained 6,125 entries. At the time, Mechel had produced 11,201 documents, meaning that it was withholding more than one-third of its responsive documents on grounds of privilege. Mechel did not serve a redaction log.

Mechel provided with its privilege log a list of ten organizations with thirty-nine people whom Mechel identified as attorneys or individuals otherwise involved in providing legal advice (the "Players List"). Despite the number of organizations, the Players List did not identify the clients that the organizations represented or the purposes for which they were engaged. The Players List did not distinguish attorneys from non-attorneys, except that it listed certain individuals under the names of organizations identifiable as law firms. The Players List did not identify all of the individuals on Mechel's initial privilege log, which contained approximately 830 unique names and e-mail addresses. The Players List did not even identify all of the law firms or lawyers that appeared on the log.

3

By letter dated September 18, 2014, Justice's counsel pointed out deficiencies in the log and asked Mechel's counsel to address them. On September 23, having not received any response, Justice moved to compel.

## C.    The Amended Privilege Log

After receiving the motion to compel, Mechel responded indignantly, protesting that the motion was "both premature and, at best, specious." Undercutting the sincerity of Mechel's indignation was a concession that the initial privilege log and Players List were inadequate. Mechel's counsel undertook to fix the deficiencies.

On September 26, 2014, Mechel provided Justice with an amended privilege log, an amended Players List, and a redaction log. Mechel also produced an additional 6,739 documents for a total of 32,008 pages. Because Mechel should have completed its production by September 12, the production should have consisted of entries previously identified on Mechel's privilege log. But the number of documents produced exceeded the number of documents on the initial log. Something was amiss. Yet Mechel's amended log did not cross-reference any of the produced documents by Bates number, so it was impossible to tell which documents came from where.

After reviewing Mechel's revised logs and document production, Justice concluded that there were still serious problems. By letter dated October 1, 2014, Justice identified a non-exclusive list of deficiencies, supporting each with examples:

- Mechel's privilege log continued to contain entries that lacked information about the author and recipients or did not identify the attorney whose advice was reflected in the document.

- Mechel's privilege log continued to contain entries for documents shared with third parties who were not listed on the Players List and whose role in providing legal advice was not explained.

- Many entries on the privilege log identified e-mails with attachments where it did not appear that Mechel had produced the attachments or explained why the attachments were privileged.

- Mechel's newly produced redaction log did not list the Bates number for entries produced in redacted form, making it impossible to tie Mechel's production of redacted documents to the entries on its redaction log.

- Mechel produced certain documents in "redacted" form where the documents were redacted in their entirety, except for their Bates numbers. As a practical matter, Mechel was still withholding these documents in their entirety, despite purportedly producing them in "redacted" form.

Justice asked Mechel to correct the deficiencies before Justice deposed several key witnesses during the week of October 6.

**D.      The Second And Third Amended Privilege Logs**

On October 4, 2014, Mechel produced a second amended privilege log, a first amended redaction log, and a second amended Players List. From October 4-7, Mechel produced another 1,084 documents for a total of 25,006 additional pages. Justice received the vast majority of them on the night before the scheduled depositions. Many of the documents exhibited defects like those identified in Justice's October 1 letter.

Mechel also sought to claw back a document produced on September 26, 2014. Justice had marked the document as an exhibit during the deposition of Stanislav Ploschenko, Mechel Mining OAO's former CFO. Although Justice destroyed the document, Justice found no record of it on Mechel's original privilege log, the first amended privilege log, or the second amended privilege log. Justice asked Mechel to

identify the entry that corresponded to the document. Instead, Mechel produced a third amended privilege log that added an entry for the document. Mechel did not fix any of the other deficiencies.

**E.     The Fourth Amended Privilege Log**

On October 23, 2014, Justice's counsel filed a supplemental affidavit in support of its motion to compel (the "Wagener Affidavit" or "Wagener Supp."). Using the documents that Mechel had produced, Justice had checked the accuracy of the descriptions on its Mechel's log and evaluated whether Mechel appeared to be making valid claims of privilege. For many of the documents that Mechel had produced from the privilege log, the descriptions on the log were misleading or wrong. Many documents that Mechel produced after September 12 did not correspond to entries on the logs; they were simply produced late. Other entries where Justice had challenged Mechel's privilege claims had been re-characterized as "Non-Responsive."

On October 29, 2014, in response to the Wagener Affidavit, Mechel produced a fourth amended privilege log, a third amended redaction log, and a third amended Players List. The parties completed briefing on Justice's motion to compel, and the court held a hearing on December 8. During oral argument, Mechel's counsel conceded that the original privilege log contained errors but argued that the errors did not result from any bad faith. Justice sought a waiver of privilege as to all entries on Mechel's logs.

## II.     LEGAL ANALYSIS

Rule 26(b)(1) frames the scope of permissible discovery:

6

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any documents, electronically stored information, or tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Ct. Ch. R. 26(b)(1). "[P]retrial discovery rules are to be afforded broad and liberal treatment." *Levy v. Stern*, 687 A.2d 573 (Del. 1996) (TABLE). "Discovery is called that for a reason. It is not called hide the ball." *Klig v. Deloitte LLP*, 2010 WL 3489735, at *7 (Del. Ch. Sept. 7, 2010).

The burden of establishing that otherwise discoverable information is privileged rests "on the party asserting the privilege."[1]

> [A] bare allegation that information and documents are protected from discovery by . . . privilege is insufficient without making more information available . . . . It is incumbent on one asserting the privilege to make a proper showing that each of the criteria [underlying the privilege] exist[s] . . . . A proper claim of privilege requires a specific

---

[1] *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992); *accord Sokol Hldgs, Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *6 n.28 (Del. Ch. Aug. 5, 2009) (Strine, V.C.); *PharmAthen, Inc. v. SIGA Techs., Inc.*, 2009 WL 2031793, at *4 n.13 (Del. Ch. July 10, 2009); *Rembrandt Techs., L.P. v. Harris Corp.*, 2009 WL 402332, at *5 n.43 (Del. Super. Feb. 12, 2009); *SICPA Hldgs., S.A. v. Optical Coating Lab., Inc.*, 1996 WL 636161, at *7 (Del. Ch. Oct. 10, 1996); *Emerald P'rs v. Berlin*, 1994 WL 125047, at *1 (Del. Ch. Mar. 30, 1994); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1118, 1122 (Del. Super. 1992); *In re Fuqua Indus., Inc. S'holders Litig.*, 1992 WL 296448, at *3 (Del. Ch. Oct. 8, 1992); *Deutsch v. Cogan*, 580 A.2d 100, 107 (Del. Ch. 1990). *See generally* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 7.04 (2010).

designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality.[2]

A party must provide "sufficient *facts* as to bring the identified and described document within the narrow confines of the privilege." *Int'l Paper*, 63 F.R.D. at 94 (emphasis in original); *accord Reese*, 1985 WL 21127, at *5 ("The documents must be precisely enough described to bring them within the rule . . . ."). To meet its burden to establish the requirements of privilege, a party typically prepares a privilege log. The log must identify

> (a) the date of the communication, (b) the parties to the communication (including their names and corporate positions), (c) the names of the attorneys who were parties to the communication, and (d) [a description of] the subject of the communication sufficient to show why the privilege applies, as well as [the issue to which] it pertains . . . . With regard to this last requirement, the privilege log must show sufficient facts as to bring the identified and described document within the narrow confines of the privilege.

*Unisuper Ltd. v. News Corp.*, C.A. No. 1699-N, slip op. at 2 (Del. Ch. Mar. 9, 2006) (internal quotations and footnotes omitted). Experienced counsel know these requirements, and any junior associate could find a case reciting them with minimal effort.[3]

---

[2] *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93-94 (D. Del. 1974); *accord Sokol Hldgs.*, 2009 WL 2501542, at *8; *Deutsch*, 580 A.2d at 107; *Reese v. Klair*, 1985 WL 21127, at *5 (Del. Ch. Feb. 20, 1985).

[3] *See, e.g.*, *Union Pac. Res. Grp., Inc. v. Pennzoil Co.*, 1997 WL 34655410, at *1 (D. Del. Aug. 12, 1997); *Cont'l Grp., Inc. v. Justice*, 536 F. Supp. 658, 664 (D. Del. 1982); *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 520 (D. Del. 1980); *Int'l Paper*, 63 F.R.D. 93-94; *see also* Wolfe & Pittenger § 7.04, at 7-57 to -58.

When a log invokes the attorney-client privilege for items that have been shared with a third party, the party asserting the privilege must explain the role played by the third party that enables the privilege to be maintained. "In most instances, a party waives the attorney-client privilege by communicating privileged information to a third party." *In re Quest Software Inc. S'holders Litig.*, 2013 WL 3356034, at *4 (Del. Ch. July 3, 2013); *accord Ryan v. Gifford*, 2008 WL 43699, at *6 (Del. Ch. Jan. 2, 2008) ("Disclosure to outsiders has never failed to waive privilege under Delaware law."). Delaware Rule of Evidence 510(a) states that

> [a] person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged or protected matter. This rule does not apply if the disclosure itself is privileged.

D.R.E. 510(a).

> Under Delaware Rule of Evidence 502(b), the privilege extends to
>
> confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

D.R.E. 502(b). A communication is "confidential" for purposes of the privilege "if not intended to be disclosed to third persons other than those to whom disclosure is made in

furtherance of the rendition of professional legal services to the client or those reasonably

necessary for the transmission of the communication." D.R.E. 502(a)(2). To bring a

communication shared with a third party within the ambit of the rule and sustain a claim

of privilege, Mechel had to explain how the third party organization or individual was a

qualified representative for purposes of Rule 502(b) or otherwise within the scope of the

definition of confidentiality in Rule 502(a)(2).

If a party fails to provide an adequate description for a document, then the

privilege for that document may be deemed waived.[4]

> The importance of providing an adequately descriptive and timely privilege
> log cannot be overlooked. Although the Delaware courts have sometimes
> allowed a party the opportunity to supplement an insufficient privilege log,
> at least where that party appears to have endeavored in good faith to
> provide an adequate description of the privileged information in the first
> instance, the failure to properly claim a privilege or immunity or failure to

---

[4] *E.g.*, *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1443 (D. Del. 1989); *Sokol Hldgs*, 2009 WL 2501542, at *8 ("Sokol has waived the right to [assert privilege] by failing to update its privilege log to provide detailed enough descriptions . . . ."); *accord Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 683 (D. Colo. 2008) ("The failure to [adequately describe any information withheld as privileged] results in a waiver of the claims of privilege."); *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) ("Failure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege."); *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 274 (E.D. Va. 2004) ("The finding of inadequacy [of descriptions in Rambus' privilege log], particularly in light of Rambus' earlier discovery and litigation misconduct, conceptually is sufficient to warrant a finding that the privileges have been waived."); *Bowne of New York City v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) ("[I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected."), *quoted with approval in U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (affirming order requiring disclosure of allegedly privileged documents because of an inadequate privilege log).

raise a privilege or immunity in a timely manner can, in appropriate circumstances, result in a waiver of the privilege.

Wolfe & Pittenger, § 7.04, at 7-51 to -52 (citation omitted). This is because "[a]n improperly asserted claim of privilege is no claim of privilege at all."[5]

Whether to deem the privilege waived or allow the party to provide a supplemental log is a matter for case-by-case adjudication. *Emerald P'rs v. Berlin*, 1994 WL 125047, at *2 ("Discovery is subject to the exercise of this Court's sound discretion.") (citing *Dann v. Chrysler Corp.*, 166 A.2d 431, 439 (Del. Ch. 1960)). If a party falls substantially short of the well-established requirements, then waiver is an appropriate consequence that helps dissuade parties from engaging in dilatory tactics. *See Willemijn Houdstermaatschaapij*, 707 F. Supp. at 1443; *Klig*, 2010 WL 3489735, at *5.

## A. The Deficiencies

Mechel produced its initial privilege log on September 12, 2014. "Mechel candidly admit[ed] that there were issues with its original privilege log." Opp. at 1. This *mea culpa* is an understatement. The initial privilege log was strikingly bad.

The most glaring deficiency was 590 entries that contained no information other than the document date, the privilege asserted, and a description of the grounds for asserting the privilege. The entries lacked information identifying the parties to the

---

[5] *Int'l Paper*, 63 F.R.D. at 94; *accord M & G Polymers USA, LLC v. Carestream Health, Inc.*, 2010 WL 1611042, at *51 n.262 (Del. Super. Apr. 21, 2010); *Williams Natural Gas Co. v. Amoco Prod. Co.*, 1991 WL 236919, at *2 (Del. Super. Nov. 8, 1991); *Council of Unit Owners of Sea Colony East v. Carl M. Freeman Assocs., Inc.*, 1990 WL 161169, at *2 (Del. Super. Sept. 26, 1990); *Playtex, Inc. v. Columbia Cas. Co.*, 1989 WL 5197, at *2 (Del. Super. Jan. 5, 1989); *Reese*, 1985 WL 21127, at *5.

communication or the attorney involved. Without this information, Justice had "no way to assess the propriety of the assertion of privilege." *Klig*, 2010 WL 3489735, at *2. Anyone who glanced at the log would realize that the entries were deficient.

Another obvious problem was Mechel's failure to provide an adequate Players List that identified the individuals who appeared on the log and their roles. The Players List listed thirty-nine of the approximately 830 unique names and e-mail addresses that appeared on Mechel's privilege log. It did not distinguish attorneys from non-attorneys, except that it listed certain individuals under the names of organizations identifiable as law firms. There were ten different organizations on the initial Players List, but Mechel did not describe by whom they were retained or what they were doing. The Players List did not explain how any of the other third parties who appeared on the log were involved in the provision of legal advice or why communicating with those third parties did not waive the privilege.

Another red flag was the massive scope of the log relative to the number of non-privileged documents that Mechel had produced. The initial privilege log was 672 pages long and contained 6,125 entries. As of September 12, 2014, Mechel had produced 11,201 documents, meaning that it had designated over one-third of the responsive documents as privileged. The underlying transaction was a business deal. Yet Mechel was claiming that one-third of the documents and communications relating to the transaction were legal in nature. One wonders how Mechel could ever get anything done if its personnel spend one-third of their time obtaining legal advice. Compounding the problem of the initial privilege log's sheer size was its incomprehensible structure. The

6,125 entries were not organized in chronological order. They did not appear to have been arranged in any particular order at all.

Unwittingly, Mechel may have revealed the reasons for the size of its log and the glaring omissions of basic information from nearly 600 entries. Entry number 227 contained an editorial note that stated: "[T]he signature was cut-off from the email and so the author is unknown. *To be safe, I assumed this was from an attorney*." Wagener Supp. Ex. A (emphasis added). Mechel obviously did not intend to produce this telling comment, which confirms what one can infer about how Mechel approached its log. Mechel inverted the law of privilege. Rather than believing that Mechel needed to justify its privilege assertions, Mechel assumed that any document an attorney might have touched would be privileged.

As a first cut when asserting privilege, a party might well set aside any document where an attorney appears as an author or recipient, or which come from an attorney's file. But that is only the starting point for privilege analysis. Once those documents have been collected, lawyers must make judgments. In the first instance, more junior lawyers typically make initial calls about which documents might be subject to a claim of privilege. Counsel disclosed that Mechel outsourced that task to contract attorneys provided by PriceWaterhouseCoopers LLC and Huron Consulting Group.

Understandably, lawyers are concerned about making a mistake and producing a privileged document, which often leads to overdesignation. Because of this risk, and because disputes about privilege are common, the senior lawyers in the case, especially the senior Delaware lawyers, must provide guidance about how the privilege assertion

13

process should unfold. As important, senior lawyers, including senior Delaware lawyers, must ensure that the guidance provided was followed. Preparing a privilege log with integrity requires the involvement and oversight of senior lawyers who know the applicable standards, understand the roles of the individuals involved in the communications, and can make textured judgment calls on a principled basis.

The involvement of senior practitioners appears to have been entirely lacking in this case. Mechel's lead counsel was candid about his lack of involvement. He was away when the log was produced and did not look at it until after the disputes arose. There is no indication that Delaware counsel had any involvement in the preparation of the log. Mechel seems to have forwarded to Justice as its initial log whatever PriceWaterhouseCoopers and Huron gave Mechel.

Once Justice raised the obvious and extensive problems with Mechel's privilege log, Mechel had an opportunity to make things right. Despite its initial combative response, which asserted that Justice's motion to compel was "both premature and, at best, specious," Mechel's counsel conceded that there were problems with the log and seemed willing to cooperate. But the reality of Mechel's response fell well short and actually made things worse.

Unfortunately, Mechel's amended privilege log, amended Players List, redaction log, and attendant document production did more to obfuscate than clarify. Mechel did not explain whether the documents it was producing were from the log, nor did it cross reference them to the log. Justice properly expected that, because Mechel should have completed its document production by that point, the newly produced documents would

14

have been entries previously identified on Mechel's log. But the volume of the documents was so large that Mechel had to be co-mingling late production with entries from its log, which turned out to be the case. Mechel's new redaction log did not provide any Bates numbers for documents produced in redacted form, so it was impossible to tie the redacted documents definitively to its redaction log. Some of the documents that Mechel claimed to be producing in redacted form were actually redacted in their entirety, with only the Bates numbers showing. The "redaction" of these documents was a farce; Mechel could just as well have continued to withhold them.

Nor did Mechel fix all of the problems with its initial privilege log. Mechel's privilege log continued to contain entries that lacked information about the author and recipients or did not identify the attorney's advice that was reflected in the document. The amended log continued to contain entries for documents shared with third parties who were not listed on the Players List and whose role in providing legal advice was not explained. And many entries on the amended log were e-mails with attachments where it did not appear that Mechel had produced the attachments or explained why the attachments were privileged.

When providing its second, third, and fourth amended logs, Mechel seemed to believe that its only obligation was to address the specific items that Justice raised. In essence, Mechel's counsel tried to outsource their obligation to produce an adequate log to Justice's counsel. The specific deficiencies that Justice identified illustrated broader and systemic problems which Mechel's counsel should have addressed. Justice had no way of knowing how widespread the problems were; Justice could only cite the examples

it found. Given that Mechel initially produced a facially inadequate log and subsequently provided deficient amended logs, it was reasonable for Justice to believe that the problems were endemic. That is the inference the court draws.

## B.     The Remedy

Mechel's approach to asserting privilege fell well short of what Rule 26 and this court's precedents require. Justice urges the court to impose the type of sanction imposed in *Klig* and order Mechel to produce all of the documents listed on its log. In *Klig*, the defendants produced a privilege log where 97% of the entries employed one of five rote descriptions and "afforded [the plaintiff] no way to assess the propriety of the assertion of privilege." 2010 WL 3489735, at *2. After the plaintiff pointed out the deficiencies, the defendants refused to correct them. *Id.* at *3. The court held that the log had been prepared in bad faith and deemed the privilege waived. *Id.* at *3-4.

Mechel's conduct could support the type of order entered in *Klig*. At the same time, unlike defense counsel in *Klig*, Mechel's counsel did acknowledge that its initial log was deficient and made some efforts to correct the situation. Because the initial log was so strikingly bad, the court could hold that the offer to do what Mechel's counsel should have done in the first place came too late, particularly when the subsequent remedial measures were so flawed. Nevertheless, because Mechel's counsel made some effort, this court will not impose the blanket waiver ordered in *Klig*. But Mechel's approach to privilege does have consequences.

16

### 1. The 590 Unidentified Entries

Privilege is deemed waived as to the 590 entries on the initial privilege log for which Mechel provided almost no pertinent information. "It takes conscious effort to render a log so devoid of content." *Klig*, 2010 WL 3489735, at *5. These entries were obviously deficient, yet Mechel waited for Justice to discover and raise the lack of critical information.

### 2. Documents Re-Designated As Non-Responsive

Since providing its initial log, Mechel has re-designated certain documents as non-responsive. Those documents will be produced. By listing the documents initially on the log, Mechel's counsel represented that they were responsive. The re-designation of the documents as non-responsive is too convenient.

Under different circumstances, it may be appropriate to permit re-designation, as this court recently did in another case. *See AM Gen. Hldgs LLC v. Renco Grp., Inc.*, 2013 WL 1668627, at *3 (Del. Ch. Apr. 18, 2013). Notably, the litigant challenging the re-designation in *AM General* "offered no basis to suspect that [the party who re-designated the documents] is not acting with integrity in this regard." *Id.* Here, Justice has marshaled ample facts that call into question Mechel's good faith efforts to prepare its privilege logs and assert privilege claims with integrity.

### 3. Documents Produced With Everything Redacted

A party that redacts the entirety of a document, except for their Bates numbers, is not using the redaction tool in good faith. Redaction enables a party to produce a document that partially contains privileged matter. Redactions must be targeted to

address only the privileged matter so that the non-privileged portion is produced. Mechel did not assert privilege in good faith when it claimed to produce documents in redacted form, but redacted the entire documents. Those documents will be produced.

### 4.    The Operative Logs And Players List

For the remaining entries, Mechel's privilege claims must rise or fall based on the information provided on the first amended privilege log, the first amended Players List, and the initial redaction log that Mechel served on September 26, 2014. This decision will refer to these documents, respectively, as the "Operative Privilege Log," the "Operative Redaction Log," and the "Operative Players List."

Mechel served additional supplemental logs after September 26, 2014, but allowing serial supplementation only "reinforces problematic incentives that already pervade the preparation of privilege logs." *Klig*, 2010 WL 3489735, at \*6. Because of the obfuscatory manner in which Mechel provided its amended log and related production, the court could limit Mechel to its initial log. Permitting Mechel to rely on its amended log, Players List, and initial redaction log errs in favor of Mechel and the maintaining of privilege.

Based on the Operative Privilege Log, the Operative Redaction Log, and the Operative Players List, this decision can adjudicate the validity of the privilege claims for certain categories of entries. Adjudicating other issues will require the appointment of a special discovery master.

### a.    Entries Not On The Operative Logs

18

If an entry appears on a later log but not on the Operative Privilege Log or the Operative Redaction Log (jointly, the "Operative Logs"), then Mechel failed to assert a valid and timely claim of privilege for that document. Privilege is waived, and the document will be produced.

### b. Documents Lacking An Individual From The Players List

If an entry on the Operative Logs fails to identify or reference an individual or organization from the Operative Players List, then Mechel failed to show how the entry involved a communication made for the purpose of facilitating the rendition of professional legal services to the client. Mechel failed to assert a valid and timely claim of privilege for that document. Privilege is waived, and the document will be produced.

### c. Documents Shared With Third Parties

If an entry on the Operative Logs discloses that the document was shared with a third party, then Mechel had the burden of explaining the role played by the third parties in order to maintain the privilege. Mechel was obligated to provide "precise and certain reasons for preserving" the privilege as to these documents. *Int'l Paper*, 63 F.R.D at 94. If the role of the third party was not explained on or before September 26, 2014, the date when Mechel provided the Operative Logs, then Mechel failed to assert a valid and timely claim of privilege. Privilege is waived, and the document will be produced.

### d. Work Product

There are entries on the Operative Logs for which Mechel has claimed work product protection. Court of Chancery Rule 26(b)(3) states that

a party may obtain discovery of documents, electronically stored information, and tangible things otherwise discoverable under paragraph (b)(1) of this rule and *prepared in anticipation of litigation* or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Del. Ch. Ct. R. 26(b)(3) (emphasis added). "The work product doctrine is intended to protect 'materials an attorney assembled and brought into being in anticipation of litigation.'" *Grimes v. DSC Commc'ns Corp.*, 724 A.2d 561, 569-70 (Del. Ch. 1998) (quoting *Lee v. Engle*, 1995 WL 761222, at *4 (Del. Ch. Dec. 15, 1995)). As with the attorney-client privilege, "[t]he party asserting a claim of work product immunity has the burden of proof to establish that the protection applies for a specific document." Wolfe & Pittenger, § 7.01 at 7-2; *accord Wolhar v. Gen. Motors Corp.*, 712 A.2d 457, 459 (Del. Super. 1997) (noting that the "initial burden of proving the existence of the work product privilege" lies with the asserting party).

During oral argument, the court asked Mechel's counsel when Mechel began anticipating litigation. Mechel's counsel represented that September 7, 2011, the date of the Weir Letter, was when Mechel began anticipating litigation. This date makes sense because Mechel's challenges to the Weir Letter form the basis for this case.

Because Mechel began anticipating litigation on September 7, 2011, Mechel cannot claim work product protection for documents prepared before that date. Any assertions of work product protection for earlier documents are overruled. If work

20

product protection was the only basis for withholding any document dated before September 7, 2011, then those documents will be produced.

### 5. The Special Discovery Master

Justice has raised other credible challenges to Mechel's privilege assertions, including challenges about the accuracy of the descriptions on the Operative Logs, whether particular entries on the logs contain business advice as opposed to legal advice, and whether certain organizations were retained to provide legal advice. The well-supported inference of over-designation and Justice's illustrative examples of erroneous entries warrant the appointment of a special discovery master to adjudicate these challenges. Retired Superior Court Judge Charles H. Toliver, IV, has agreed to serve as special discovery master for this case (the "Special Discovery Master").

Within one week after the date of this decision, Mechel shall produce the documents called for by this decision. Mechel shall serve contemporaneously on Justice a combined privilege log and redaction log (the "Corrected Log") that (i) lists all entries in chronological order, (ii) identifies entries that have been produced in redacted form with the word "REDACTED," and the Bates number of the produced document, and the date of production, (iii) identifies each entry produced with the word "PRODUCED," the Bates number of the produced document, and the date of production, and (iv) highlights the names of individuals on the Corrected Log who are attorneys identified on the Operative Players List in one color and those who are non-attorneys identified on the Operative Players List in a different color.

If Justice wishes to pursue further challenges to the Operative Privilege Log, then, within two weeks after the date of this decision, Justice shall submit an opening brief making those challenges to the Special Discovery Master. Justice may identify up to 10% of the entries on the Corrected Log for review by the Special Discovery Master, who shall examine the underlying documents *in camera* and determine whether the descriptions on the privilege log were accurate and whether privilege was properly asserted. If the description was not accurate, or if privilege was not otherwise properly asserted, then the document shall be produced. If the document contains business advice, then the document will be produced. If the document contains a mix of business and legal advice, and the legal advice can be redacted, then the document will be produced in redacted form. Justice may seek leave from the Special Discovery Master to challenge additional entries on the log beyond the 10%. The Special Discovery Master may, in his discretion, review as many of the entries beyond 10% as he deems appropriate.

Justice may present to the Special Discovery Master any argument that a particular advisor, such as International Mining Consultants, was not engaged to assist in providing legal advice or in creating work product, or only was doing so after a certain point in time. Justice make seek leave from the Special Discovery Master to present other issues or arguments.

The Special Discovery Master will determine the briefing schedule for further submissions from the parties and for any hearing. The Special Discovery Master may provide instructions to the parties regarding the content of their submissions and the nature and scope of the hearing. Ideally, the Special Discovery Master will be able to

provide his report and recommendation to the court on or before February 27, 2015. The Special Discovery Master may receive assistance from attorneys at his law firm, Morris James LLP. The Special Discovery Master and attorneys at his firm will be compensated at their customary hourly rates.

Mechel shall bear the expenses of the Special Discovery Master. Pursuant to Rule 37, Mechel shall bear the reasonable expenses, including attorneys' fees, that Justice incurred in connection with its review of Mechel's privilege logs, the efforts to meet and confer with Mechel, the motion to compel, and the proceedings before the Special Discovery Master.

Justice may re-depose any Mechel witness it has previously deposed who is an author or recipient of a document produced in response to this decision. The scope of the renewed deposition shall be limited to the newly produced documents and the subject matter they cover. Justice may re-depose each witness only once, at a time of its choosing that is convenient to the witness and Mechel's counsel. If Justice chooses to re-depose a witness before the proceedings before the Special Discovery Master are complete, Justice may not re-depose the witness if Mechel produces additional documents as a result of the Special Discovery Master process.

### III.   CONCLUSION

The motion to compel is granted in part. The parties shall proceed as directed in this decision.