# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE OXBOW CARBON LLC       )     Consol. C.A. No. 12447-VCL
UNITHOLDER LITIGATION           )

## MEMORANDUM OPINION

Date Submitted: March 8, 2017
Date Decided: March 13, 2017

Kenneth J. Nachbar, Thomas W. Briggs, Jr., Richard Li, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; R. Robert Popeo, Michael S. Gardener, Breton Leone-Quick, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., Boston, Massachusetts; *Attorneys for Oxbow Carbon LLC*.

Stephen B. Brauerman, Sara E. Bussiere, BAYARD, P.A., Wilmington, Delaware; *Special Conflicts Counsel for Oxbow Carbon LLC*.

Stephen C. Norman, Jaclyn C. Levy, Daniyal M. Iqbal, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; David B. Hennes, C. Thomas Brown, Daniel J. Chirlin, ROPES & GRAY LLP, New York, New York; *Attorneys for Oxbow Carbon & Minerals Holdings, Inc., Ingraham Investments LLC, Oxbow Carbon Investment Company LLC, and William I. Koch*.

Patricia R. Urban, PINCKNEY, WEIDINGER, URBAN & JOYCE LLC, Greenville, Delaware; *Special Conflicts Counsel for Oxbow Carbon LLC, Oxbow Carbon & Minerals Holdings, Inc., Ingraham Investments LLC, Oxbow Carbon Investment Company LLC, and William I. Koch*.

Kevin G. Abrams, Michael A. Barlow, J. Peter Shindel, Jr., Daniel R. Ciarrocki, April M. Ferraro, ABRAMS & BAYLISS LLP, Wilmington, Delaware; Brock E. Czeschin, Matthew D. Perri, Sarah A. Galetta, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Michael B. Carlinsky, Jennifer J. Barrett, Chad Johnson, Sylvia Simson, Silpa Maruri, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York; *Attorneys for Crestview-Oxbow Acquisition, LLC, Crestview-Oxbow (ERISA) Acquisition, LLC, Crestview Partners, L.P., Crestview Partners GP, L.P., Crestview Advisors, LLC, Robert J. Hurst, and Barry S. Volpert*.

Evan O. Williford, Andrew J. Huber, THE WILLIFORD FIRM LLC, Wilmington, Delaware; *Special Conflicts Counsel for Crestview-Oxbow Acquisition, LLC, Crestview-Oxbow (ERISA) Acquisition, LLC, Crestview Partners, L.P., Crestview Partners GP, L.P., Crestview Advisors, LLC, Robert J. Hurst, and Barry S. Volpert.*

J. Clayton Athey, John G. Day, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Dale C. Christensen, Jr., Michael B. Weitman, SEWARD & KISSEL LLP, New York, New York; *Attorneys for Defendant and Counterclaim-Plaintiff Load Line Capital, LLC.*

David C. McBride, Kathaleen St. J. McCormick, Elisabeth S. Bradley, Meryem Y. Dede, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Rusty Hardin, Ryan Higgins, Jeremy Monthy, RUSTY HARDIN & ASSOCIATES, LLP, Houston, Texas; *Attorneys for Defendant Eric P. Johnson.*

David C. McBride, Kathaleen St. J. McCormick, Elisabeth S. Bradley, Meryem Y. Dede, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Michael P. Angelini, Joshua A. Lewin, Lynette Paczkowski, David Travers, BOWDITCH & DEWEY, Boston, Massachusetts; *Attorneys for Defendant Christina Wing O'Donnell.*

**LASTER, Vice Chancellor.**

Individuals and entities affiliated with the Crestview private equity complex (collectively, the "Crestview Parties") have moved to compel discovery from William I. Koch and his affiliates (collectively, the "Koch Parties").[1] This decision largely grants the motion.

## I.    LEGAL ANALYSIS

"[P]retrial discovery rules are to be afforded broad and liberal treatment." *Levy v. Stern*, 687 A.2d 573 (Del. 1996) (TABLE). Rule 26(b)(1) states:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any documents, electronically stored information, or tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Ct. Ch. R. 26(b)(1).

---

[1] The following individuals and entities comprise the Crestview Parties: Robert J. Hurst, Barry S. Volpert, Crestview-Oxbow Acquisition, LLC, Crestview-Oxbow (ERISA) Acquisition, LLC, Crestview Partners, L.P., Crestview Partners GP, L.P., and Crestview Advisors, LLC.

The following entitles and individuals comprise the Koch Parties: William I. Koch, Oxbow Carbon & Minerals Holdings, Inc. ("Koch Holdings"), Ingraham Investments LLC and Oxbow Carbon Investment Company LLC (the "Small Holders"), and Oxbow Carbon LLC (the "Company").

"The scope of discovery pursuant to Court of Chancery Rule 26(b) is broad and far-reaching . . . ." *Cal. Pub. Emps. Ret. Sys. v. Coulter*, 2004 WL 1238443, at \*1 (Del. Ch. May 26, 2004) (citation omitted). "[T]he spirit of Rule 26(b) calls for all relevant information, however remote, to be brought out for inspection not only by the opposing party but also for the benefit of the Court . . . ." *Boxer v. Husky Oil Co.*, 1981 WL 15479, at \*2 (Del. Ch. Nov. 9, 1981). Relevance "must be viewed liberally," and discovery into relevant matters should be permitted if there is "any possibility that the discovery will lead to relevant evidence." *Loretto Literary & Benevolent Inst. v. Blue Diamond Coal Co.*, 1980 WL 268060, at \*4 (Del. Ch. Oct. 24, 1980). "Discovery is called that for a reason. It is not called 'hide the ball.'" *Klig v. Deloitte LLP*, 2010 WL 3489735, at \*7 (Del. Ch. Sept. 7, 2010).

When a party objects to providing discovery, "[t]he burden is on the objecting party to show why and in what way the information requested is privileged or otherwise improperly requested."[2] Generic and formulaic objections "are insufficient." *Van de Walle*, 1984 WL 8270, at \*2.

---

[2] *Van de Walle v. Unimation, Inc.*, 1984 WL 8270, at \*2 (Del. Ch. Oct. 15, 1984); *accord Prod. Res. Gp., L.L.C. v. NCT Gp., Inc.*, 863 A.2d 772, 802 (Del. Ch. 2004) (Strine, V.C.) (citation omitted). A more accurate description of the discovery process is "a practical form of burden-shifting." *In re Appraisal of Dole Food Co., Inc.*, 114 A.3d 541, 551 (Del. Ch. 2014). "[T]he party seeking the information must first provide some minimal explanation as to why the discovery satisfies the requirements of relevance and conditional admissibility." *Id.* Once the party seeking discovery has met that initial burden, "[i]t is then up to the party opposing discovery to show that the explanation is erroneous" or that there are other reasons why discovery should be limited or foreclosed. *Id.*

Ample federal authorities reinforce these points. Because the Court of Chancery Rules are pattered on the Federal Rules of Civil Procedure, it is appropriate to look to federal authorities for guidance. *See Plummer v. Sherman*, 861 A.2d 1238, 1242 (Del. 2004). Recent amendments to the Federal Rules have made clear that the objecting party has the burden to articulate its objections with specificity. *See Committee Notes on Rules—2015 Amendment*, Fed. R. Civ. P. 34 (2015) ("Rule 34(b)(2)(B) is amended to require that objections to Rule 34 requests be stated with specificity."). Even before this codification, numerous federal decisions made clear that "boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."[3] Summarizing the case law,

---

[3] *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371 (11th Cir. 2009) ("[B]oilerplate objections may border on a frivolous response to discovery requests."); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) ("[T]o say an interrogatory was overly broad, burdensome, oppressive and irrelevant [is] not adequate to voice a successful objection to an interrogatory." (internal quotations omitted)); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory."); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) ("[B]oilerplate objections [are] legally inadequate or meaningless."); *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011) ("Boilerplate or generalized objections are tantamount to no objection at all . . . ."); *Hager v. Graham*, 267 F.R.D. 486, 498 (N.D. W. Va. 2010) ("The objection is only a general statement that does not specify how the [request for production] is vague, ambiguous, and overly broad. Therefore, the objection is improper."); *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) ("Boilerplate objections are not acceptable; specific objections are required . . . ." (internal quotations omitted)); *A. Farber & P'rs, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections.").

one commentator observed that "[b]oilerplate objections have been considered prima facie evidence of a Rule 26 violation, which causes the objecting party to waive any legitimate objections that they may or may not have had."[4] It is particularly evasive for a response to recite broad, generic, and formulaic objections, then  purport to answer "subject to the objections."[5] Such a response makes it impossible to determine what information a party

---

[4] Brian Morris, *The 2015 Proposals to the Federal Rules of Civil Procedure: Preparing for the Future of Discovery*, 41 N. Ky. L. Rev. 133, 152 (2014) (citations omitted). *See generally* Matthew L. Jarvey, *Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, and What We Can Do About Them*, 61 Drake L. Rev. 913 (2013) (discussing the issue of boilerplate objections in detail).

[5] *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 401 (S.D. Fla. 2008) ("Parties shall not recite a formulaic objection followed by an answer to the request. It has become common practice for a party to object on the basis of any of the above reasons, and then state that 'notwithstanding the above,' the party will respond to the discovery request, subject to or without waiving such objection. Such objection and answer preserves nothing, and constitutes only a waste of effort and the resources of both the parties and the court."); *see* Robert K. Wise, *Ending Evasive Responses to Written Discovery: A Guide for Properly Responding (and Objecting) to Interrogatories and Document Requests Under the Texas Discovery Rules*, 65 Baylor L. Rev. 510, 567–68 (2013) ("Many practitioners . . . use [the] evasive method[] in responding to interrogatories and document requests [of having a] section at the beginning of the response entitled 'general objections,' which contains every imaginable objection, such as overbreadth, undue burden, relevance, vagueness, ambiguity, harassment, cumulativeness, duplicativeness, and privilege, followed by a separate section with answers to each discovery request that incorporate the 'general objections' by reference 'to the extent' they apply to the pertinent discovery request."); *id.* at 568 (explaining that another evasive method of responding to discovery is "to set forth in the response to each discovery request a litany of prophylactic, boilerplate objections, such as those set forth above, and then 'subject to and without waiving' the objections state, for example, that 'non-privileged responsive documents will be produced'").

4

has agreed to provide and whether the response is complete; it therefore amounts to a waiver of the objections that purportedly were preserved.[6]

For an objecting party to carry its burden, the objection must be specific, the party making it must explain why it applies on the facts of the case to the request being made, and if the party is providing information subject to the objection, the party must articulate how it is applying the objection to limit the information it is providing.[7] In short, "[o]bjections should be plain enough and specific enough so that the Court can understand in what way the discovery is] claimed to be objectionable." *Van de Walle*, 1984 WL 8270,

---

[6] *Mills v. E. Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D. W. Va. 2009) ("Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections."); *Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006) ("[F]ailure to make particularized objections to document requests constitutes a waiver of those objections."); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979) ("General objections may result in waiver of the objections."). *See generally* Wise, *supra*, at 569 ("[B]ecause general objections are nonspecific and 'hide the ball' with respect to what information or material is being provided and what information or material is being withheld and why . . . [they] have been universally condemned by courts for this very reason."); Mark Kosieradzki & Kara Rahimi, *Keep Discovery Civil: When Opposing Counsel Obstructs or Deflects Your Access to Evidence, Look to the Rules and Long-Settled Case Law for Relief. Both Are on Your Side*, Trial, June 2008, at 32 ("[C]ourts have held that asserting numerous general objections obscures any valid objections and may result in a waiver of the valid objections absent a showing of good cause.").

[7] *See Josephs*, 677 F.2d at 992 (explaining that a party's objections must "show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive" (internal quotations and alterations omitted)); *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (explaining that if party's objections "are not applied with sufficient specificity to enable this Court to evaluate their merits . . . this Court will overrule [the party's] objections in their entirety"); *Folding Carton*, 83 F.R.D. at 264 ("Objections to interrogatories must be specific and [be] supported by a detailed explanation why the interrogatories are improper.").

at *2. *See generally* Kosieradzki & Rahimi, *supra*, at 30–31 ("Objections must be sufficiently particular to advise the requesting party and the court to what extent the discovery request is objectionable.").

## A. Surveillance Information

The Crestview Parties sought discovery into the Koch Parties' use of surveillance devices and private investigators to obtain information about the Crestview Parties, Christine O'Donnell, and Eric Johnson. The Koch Parties have relied affirmatively on the fruits of these sources of information in pressing their claims, yet they refused to provide information about the sources or to produce the material they obtained. The Koch Parties relied primarily on generic objections about relevance and burden. Those objections are overruled. The Koch Parties will produce the information sought.

Koch has installed security cameras in his houses and in the Company's offices. The Koch Parties have collected surveillance footage of the Crestview Parties, Johnson, O'Donnell, Michael McAuliffe (Oxbow's former General Counsel), Steve Fried (Oxbow's former Chief Operating Officer), and representatives of other parties to the case. The Koch Parties clearly believe that at least some of that footage is relevant to the claims or defenses in this action because they have cited the results of their investigations in various submissions to the court.

Koch also makes extensive use of private investigators and has deployed them in connection with this litigation. For example, in September 2016, former F.B.I. agent Richard "Jim" Elroy tracked down O'Donnell's nanny and personal assistant, Rachel Corrigan, and asked to meet with her in Boston to discuss O'Donnell. During the meeting,

Elroy provided Corrigan with a business card that identified him as an investigator in the "Oxbow legal department." The Koch Parties have logged as privileged various communications with Elroy and documents he prepared.

### 1. Requests Seeking The Surveillance Information

Request 91 sought "[a]ll audio and video recordings, including any transcripts or other documents referring thereto, of communications with Crestview, Load Line, Arclight and any individuals formerly or currently affiliated with those entities." Request 92 sought "[a]ll documents or audio or video recordings concerning surveillance of or investigations into Crestview, Load Line, Mr. Hurst, Mr. Volpert, Ms. O'Donnell, or Mr. Johnson."

The Koch Parties responded to these requests with non-substantive and formulaic objections. They first objected to producing surveillance information on grounds of relevance. The objection was generic and therefore no objection at all. Moreover, the information sought was obviously relevant. The Koch Parties have themselves relied on the results of surveillance when making affirmative claims in this case. The Koch Parties also have logged surveillance-related communications on their privilege log, thereby recognizing that the information is relevant. *See Mechel Bluestone, Inc. v. James C. Justice Cos.*, 2014 WL 7011195, at *8 (Del. Ch. Dec. 12, 2014) ("By listing the documents initially on the log, Mechel's counsel represented that they were responsive."). The Koch Parties even sought similar materials from Crestview by requesting "[a]ll documents relating to audio or video recordings or transcripts relating to any allegations made in the pleadings." By asking for the information themselves, the Koch Parties' attorneys represented that they believed the information was relevant. Most tellingly, the Koch Parties agreed to produce

7

"non-privileged . . . voice messages," demonstrating that they understood the relevance of the request. The relevance objection could not have been asserted in good faith.

The Koch Parties also objected to these requests as "excessive, overbroad, and unduly burdensome." This is insufficient. "The objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997); *accord Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D. Pa. 1980) (explaining that an objecting party "must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden" (internal citations omitted)). The responses provided no information whatsoever in support of these assertions. The objections are overruled.

In response to Request 92, the Koch Parties also claimed that the terms "investigations" and "surveillance" were "vague and ambiguous." It is obvious what the Crestview Parties were seeking, and it is not credible for the Koch Parties to pretend that they were flummoxed by these concepts. In any event, the Koch Parties were obligated to construe the terms in the requests reasonably. If they believed these terms were somehow vague or ambiguous in the context of the case, then they should have explained in what way the terms were giving them trouble, interpreted the terms in a reasonable and constructive way, and set out in their responses how they were interpreting them.

8

The Koch Parties shall file supplemental responses that do not contain non-substantive, general objections and which do not profess confusion about straightforward English concepts. The Koch Parties shall produce the materials sought.

## 2. The Assertion Of Privilege

In response to Requests 91 and 92, the Koch Parties have asserted claims of privilege and work product protection for approximately 160 items concerning Elroy. The Koch Parties shall produce these documents.

The burden of establishing that otherwise discoverable information is privileged rests "on the party asserting the privilege."[8]

> [A] bare allegation that information and documents are protected from discovery by . . . privilege is insufficient without making more information available. . . . It is incumbent on one asserting the privilege to make a proper showing that each of the criteria [underlying the privilege] exist[s]. . . . A proper claim of privilege requires a specific designation and description of the documents within its scope

---

[8] *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992); *accord Sokol Hldgs., Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *6 n.28 (Del. Ch. Aug. 5, 2009) (Strine, V.C.); *PharmAthene, Inc. v. SIGA Techs., Inc.*, 2009 WL 2031793, at *4 n.13 (Del. Ch. July 10, 2009); *Rembrandt Techs., L.P. v. Harris Corp.*, 2009 WL 402332, at *5 n.43 (Del. Super. Feb. 12, 2009); *SICPA Hldgs., S.A. v. Optical Coating Lab., Inc.*, 1996 WL 636161, at *7 (Del. Ch. Oct. 10, 1996); *Emerald P'rs v. Berlin*, 1994 WL 125047, at *1 (Del. Ch. Mar. 30, 1994); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1118, 1122 (Del. Super. 1992); *In re Fuqua Indus., Inc. S'holders Litig.*, 1992 WL 296448, at *3 (Del. Ch. Oct. 8, 1992); *Deutsch v. Cogan*, 580 A.2d 100, 107 (Del. Ch. 1990). *See generally* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 7.04 (2012).

as well as precise and certain reasons for preserving their confidentiality.[9]

A party must provide "sufficient *facts* as to bring the identified and described document within the narrow confines of the privilege." *Int'l Paper*, 63 F.R.D. at 94 (emphasis in original); *accord Reese*, 1985 WL 21127, at *5 ("The documents must be precisely enough described to bring them within the rule . . . .").

The Crestview Parties have established a sufficient evidentiary basis to hold that the privilege and work product doctrine do not extend to these items. When asked about Elroy's affiliation during a recent Board meeting, the Company's litigation counsel, Robert Popeo, and its General Counsel, Dave Clark, stated that Elroy was "not being paid by, or in the service of, the Company in connection with this litigation." Ferraro Aff. Ex. G at Oxbow_00237410.

Separately, the Company has waived any protection for documents relating to Elroy's investigation by placing the matter "at issue" in this litigation. A party waives the attorney-client privilege by "inject[ing] the communications themselves into the litigation" or "inject[ing] an issue into the litigation, the truthful resolution of which requires an examination of the confidential communications." *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 2008 WL 241616, at *3 (Del. Ch. Jan. 17, 2008) (quotation omitted). Here, the Koch Parties have put at issue the results of Elroy's investigation of O'Donnell by

---

[9] *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93–94 (D. Del. 1974); *accord Sokol Hldgs.*, 2009 WL 2501542, at *8; *Deutsch*, 580 A.2d at 107; *Reese v. Klair*, 1985 WL 21127, at *5 (Del. Ch. Feb. 20, 1985).

arguing to the court that the investigation "revealed evidence suggesting that Ms. O'Donnell may have inappropriately used her Renegade administrative assistant (paid for by Renegade) as her personal nanny and house manager." Dkt. 302 at 14 n.3. Having used the results of the investigation as a sword, the Koch Parties cannot invoke privilege as a shield.

Work product protection is inapplicable because the log does not identify the litigation that was being contemplated. To meet its burden to establish the requirements of privilege, a party typically prepares a privilege log. The log must identify

> (a) the date of the communication, (b) the parties to the communication (including their names and corporate positions), (c) the names of the attorneys who were parties to the communication, and (d) [a description of] the subject of the communication sufficient to show why the privilege applies, as well as [the issue to which] it pertains . . . . With regards to this last requirement, the privilege log must show sufficient facts as to bring the identified and described document within the narrow confines of the privilege.

*Unisuper Ltd. v. News Corp.*, C.A. No. 1699-N, slip op. at 2 (Del. Ch. Mar. 9, 2006) (internal quotation omitted). Many cases recite these requirements.[10] When a party seeks to invoke the work product doctrine, a party cannot merely recite "in anticipation of litigation" as a formulaic set of magic words. A party must identify the specific litigation that forms the basis of the work product claim. *See, e.g.*, *St. Johns Ins. Co. v. Nautilus Ins.*

---

[10] *See, e.g.*, *Union Pac. Res. Gp., Inc. v. Pennzoil Co.*, 1997 WL 34655410, at *1–2 (D. Del. Aug. 12, 1997); *Cont'l Gp., Inc. v. Justice*, 536 F. Supp. 658, 664 (D. Del. 1982); *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 520 (D. Del. 1980); *Int'l Paper*, 63 F.R.D. 93–94; *see also* Wolfe & Pittenger § 7.04, at 7-57 to -58.

11

*Co.*, 2008 WL 1897572, at *2 (M.D. Fla. Apr. 28, 2008) (requiring party to identify specific litigation forming the basis for work product claim); *Elec. Frontier Found. v. Dept. of Justice*, 2016 WL 7406429, at *9 (N.D. Cal. Dec. 22, 2016) (holding that the "mere recitation of the elements" of work product protection without identifying the "current or foreseeable litigation" was insufficient).

The items on the privilege log relating to Elroy also lack sufficient descriptions of their content. Every entry concerning him contains one of five generic descriptions: "prepared in anticipation of litigation regarding" along with one of (1) "employee expenses," (2) "employee work performance," (3) "funds spent in connection with the Boston office," (4) "employee practices" or (5) travel policies.

For one, these are "rote and redundant" privilege justifications that are insufficient under Delaware law. *Klig v. Deloitte LLP*, 2010 WL 3489735, at *6, *8 (Del. Ch. Sept. 7, 2010). Because these repetitive descriptions "fall[] substantially short of [Delaware's] well-established requirements," waiver is an appropriate consequence. *Mechel Bluestone*, 2014 WL 7011195, at *6. For another, each topic appears to be a business matter, not a litigation matter. "Routine investigations are generally not protected by the work product doctrine." *State ex rel. Brady v. Ocean Farm Ltd. P'ship*, 2002 WL 259955, at *2 (Del. Ch. Feb. 14, 2002). Even "[m]aterials assembled during routine investigations by counsel are not protected as work product."[11] Bolstering the view that the materials are not

---

[11] *Ramada Inns, Inc. v. Drinkhall*, 490 A.2d 593, 596 (Del. Super. 1985); *see United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 137 (D.D.C. 2012) (internal audit report not work product); *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477

12

protected, the only recipient of any of Elroy's communications was Karen Rowe, a human resources employee at Renegade Management, LLC, Koch's family office. Although each entry claims that the work was performed "at the direction of Richard Callahan, Esq.," Callahan was not a sender or recipient of a single communication that has been withheld. Moreover, Callahan is a member of the Company's Board and was appointed to that position by Koch Holdings. There is substantial reason to doubt that he was acting in a legal capacity. "[I]t is the rare case in which a company genuinely anticipating litigation will leave its attorneys on the outside looking in." *ISS Marine Servs., Inc.*, 905 F. Supp. 2d at 138; *see also Morgan v. Conectiv*, 2005 WL 3441362, at *2 (Del. Super. Oct. 7, 2005) (rejecting work product claims).

The claims of privilege and work product for the Elroy documents and communications are overruled. The Koch Parties shall produce these documents.

### 3. The Interrogatory About The Use Of Private Investigators

Interrogatory 2 calls on the Koch Parties to "[i]dentify each Person who has been retained by Plaintiffs to conduct any surveillance or investigation into Crestview, Load Line, Christina O'Donnell, Eric Johnson, Michael McAuliffe, or Steve Fried and describe the nature of the each such person's surveillance or investigation assignment and the results of same." The Koch Parties responded to this interrogatory with the same non-substantive,

---

(N.D. Tex. 2004) (internal investigation of employee theft is not work product); *cf. Charles v. Lizer*, 2003 WL 21688306, at *2 (Del. Super. July 10, 2003) (holding that statements given by defendant to an insurance adjuster are not work product).

generic objections on the basis of relevance, burdensomeness, and supposed ambiguity of the terms "surveillance" and "investigation." The Koch Parties also asserted in conclusory fashion the attorney-client privilege and work product doctrine.

The generalized objections are no objections at all and overruled on that basis. The objections to straightforward English terms are not credible. The invocations of privilege and the work product doctrine are conclusory and inadequate. They are also overruled for the additional reason that neither doctrine protects discovery of "the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts." *Atkins v. Hiram*, 1993 WL 545416, at \*3 (Del. Ch. Dec. 23, 1993) (quoting 8 Charles A. Wright et al., *Federal Practice and Procedure* § 2023 (1970)).

The Koch Parties shall provide a supplemental response to Interrogatory 2 without relying on their objections. The response shall include the basic factual information, including who conducted the investigation, the terms of the engagement, the target of the investigation, the purpose of the investigation, the steps in the investigation (including dates, times, and places when the investigation was conducted), and the facts generated by the investigation.

## B. Information About Director Independence

The Crestview Parties sought information regarding whether individuals appointed to the Board by Koch Holdings are independent of Koch. Crestview has asserted that Koch dominates and controls the other directors. A party alleging "domination and control of a company's board of directors bears the burden of proving such control by showing lack of independence." *Texlon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002). Information

14

regarding the relationships between Koch and the directors appointed by Koch Holdings is plainly discoverable. The Koch Parties' objections to these requests are overruled.

Interrogatory 9 called on the Koch Parties to

> [i]dentify each employment position that each [Koch Holdings]-appointed Director of Oxbow has held from 1990 onward, including (i) the name of the entity which employed the Director; (ii) the position held by the Director; (iii) the years in which the position was held; and (iv) the compensation received by the Director.

The Koch Parties advanced a variety of non-substantive, general objections to this interrogatory, which are overruled. The Koch Parties shall serve a supplemental response that does not contain their general objections.

Interrogatory 10 called on the Koch Parties to

> [s]tate all business, personal, financial, or professional relationships between each [Koch Holdings]-appointed director of Oxbow and Mr. Koch, including a description of the nature of the relationship, the length of time that the relationship has existed, and the amount of money that each [Koch Holdings]-appointed director has received as a result of the relationship.

The Koch Parties asserted a variety of non-substantive, general objections to this interrogatory, which are overruled. The Koch Parties did not provide an answer to this interrogatory. They shall serve a supplemental response that does not contain their general objections and which provides the information sought.

Request 43 called on the Koch Parties to produce

> [a]ll Documents relating to or demonstrating any business, financial, employment, or personal relationships between Mr. Koch and the [Koch Holdings]-appointed Directors of Oxbow,

15

other than Documents concerning the Directors' role on the Oxbow Board.

The Koch Parties asserted a variety of non-substantive, general objections to this interrogatory, which are overruled. The Koch Parties did not provide an answer to this interrogatory. They shall serve a supplemental response that does not contain their general objections and which provides the information sought.

Request 44 called on the Koch Parties to produce "[a]ll Documents relating to any decision by any Person to nominate or propose any director candidate for selection as a Director." The Koch Parties asserted a variety of non-substantive, general objections to this interrogatory, which are overruled. The Koch Parties did not provide an answer to this interrogatory. They shall serve a supplemental response that does not contain their general objections and which provides the information sought.

## C. Information About Personal Use Of Company Resources And Support For Oxbridge Academy

The Crestview Parties have alleged that Koch has breached his contractual obligations and fiduciary duties because he wishes to retain his position with the Company to advance his personal interests. A party may obtain discovery into the motivations behind the conduct of an individual or entity when the motive is relevant to a claim or defense. *See, e.g.*, *Sample v. Morgan*, 914 A.2d 647, 660 (Del. Ch. 2007) (Strine, V.C.); *Van de Walle v. Unimation, Inc.*, 1985 WL 11545, at *2 (Del. Ch. Mar. 20, 1985).

Requests 88 sought documents relating to reimbursement of payments for travel, entertainment, and similar expenses. Request 90 sought documents relating to reimbursement of payments for services, goods, and similar expenses. Interrogatory 25

16

sought the total amount of reimbursements that Koch received for each year from 2007 onward. Interrogatory 26 sought a breakout of expenses for (i) wine, liquor, and alcoholic beverages, (ii) the use of a private airplane, and (iii) payment of Oxbridge Academy tuition for relatives, present or former employees, and business associates.

In response to these requests, the Koch Parties asserted a bevy of generic, non-substantive objections, which are overruled. They then provided a single table identifying the total amount of expenses reimbursed on an annual basis. This is inadequate.

The Koch Parties have represented that they cannot break out alcohol expenses from food expenses. Accepting that representation, they shall provide a table similar to what was provided in response to Interrogatory 25 but which identifies food expenses. The Koch Parties shall provide a similar table addressing airplane reimbursements. The Koch Parties have represented that Koch was not reimbursed for any Oxbridge Academy tuition. In addition to the summary tables, the Koch Parties shall produce any expense reports and supporting documents that were the basis for the payments to Koch.

Interrogatories 22 and 23 sought information about Oxbridge Academy. The Crestview Parties have sufficiently articulated a theory under which Koch could be motivated to retain control of the Company as a means of supporting Oxbridge Academy. Interrogatory 22 seeks information about "each payment made by or on behalf of Oxbow or any affiliate(s) of Oxbow to Oxbridge Academy from 2007 onward." The Koch Parties have limited their response to tuition payments. That limitation is overruled, as are the non-substantive general objections raised in response to this interrogatory. The Koch Parties shall provide a supplemental response that identifies all payments.

17

Interrogatory 23 asks the Koch Parties to "[i]dentify each and every current or former Oxbow employee, Oxbow board member, or employee of an entity controlled by William Koch whose child or relative has attended Oxbridge Academy." In light of the privacy concerns raised by the Koch Parties, they shall respond by identifying the total number of employees below the senior executive level whose children or relatives attended Oxbridge Academy. They shall identify by name the board members and senior executives. The parties' senior Delaware counsel shall meet in person to reach agreement on where to draw the line on senior executives.

## D.    Information About The Failed Gunnison Deal

The Crestview Parties have contended that Koch sought to have the Company acquire one of his affiliates, Gunnison Energy LLC, as a means of enriching himself and diluting the Crestview Parties. The transaction did not close, and while that does not take it outside the scope of discovery, it affects the balancing of factors under Rule 26. It appears to me that the parties have quite enough to litigate in this case without taking on the merits of an unconsummated transaction. The parties may inquire into the Gunnison deal in deposition, and witnesses may testify about it at trial. If the nature of the deposition testimony warrants some limited document production, that can be considered in due course. For present purposes, the Koch Parties need not respond to Request 23 or Interrogatory 28.

## II.    CONCLUSION

The motion to compel is granted in part. The parties shall proceed as directed in this decision.

18